IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DELORES DIANA ANTHONY,  ) | Civil Action No. 3:12-cv-02413-DCN-JRM |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | |
| ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ACTING  ) | |
| COMMISSIONER OF SOCIAL SECURITY,[1] ) | |
| ) | |
| Defendant.  ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB on June 6, 2009, alleging disability as of August 3, 2004. Tr. 47, 111-114, 138. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 15, 2011, at which Plaintiff and a vocational expert ("VE") appeared and testified. Tr. 27-58. On July 1, 2011, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled because work existed in the national economy which Plaintiff could perform.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as Defendant in this action.

Plaintiff was fifty-three years old at the time she was last insured for DIB. She attended high school through the twelfth grade but did not graduate or receive a GED. Tr. 39-40. Plaintiff's past relevant work was as a food service worker. Tr. 20, 190. Plaintiff alleges disability due to neck pain, right upper extremity problem, left upper extremity problem, cervical myofascial pain disorder, depression, and anxiety. Tr. 13, 142.

The ALJ found (Tr. 18-24):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2. The claimant did not engage in substantial gainful activity during the period at issue (20 CFR 404.1571 *et seq.*).

3. During the period at issue, the claimant had the following severe impairments: neck pain, right upper extremity problem, left upper extremity problem, myofascial/pain disorder, depression, and anxiety (20 CFR 404.1520(c)).

4. During the period at issue, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, during the period at issue, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with restrictions that required simple, routine tasks; a supervised environment; no required interaction with the public or "team"-type interaction with co-workers; no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over six hours in an eight-hour workday; only occasional stooping, twisting, crouching, kneeling, crawling and climbing of stairs or ramps; no climbing of ladders or scaffolds; no reaching over shoulder height with either upper extremity; avoidance of hazards such as unprotected heights and dangerous machinery; and an environment reasonably free from cold temperatures.

6. During the period at issue, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

    7.        The claimant was born on October 28, 1957 and was 53 years old on the date last insured, which is defined as a[n] individual closely approaching advanced age (50-54) (20 CFR 404.1563).

    8.        The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

    9.        Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10.      During the period at issue, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

    11.      The claimant was not under a disability, as defined in the Social Security Act, at any time during the period at issue (20 CFR 404.1520(g)).

The Appeals Council denied Plaintiff's request for review on June 29, 2012. Tr. 1-3. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on August 21, 2012.

## **STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

**MEDICAL EVIDENCE**

Plaintiff sought treatment after a workplace incident that occurred in January 2004 which caused injury to her back, neck, and shoulders. On March 31, 2004, Dr. Bernard G. Kirol diagnosed Plaintiff with bilateral impingement syndrome, left worse than right. X-rays of Plaintiff's right and left scapulae revealed a well-formed scapular body with no evidence of acute bony injury. Dr. Kirol administered a steroid injection in the left subacromial space, recommended physical therapy, and placed Plaintiff on the work restrictions of no overhead lifting or reaching and no push/pull activities. Tr. 467-468. On April 30, 2004, Dr. Kirol ordered an MRI of Plaintiff's left shoulder. On May 6, 2004, Dr. Kirol noted that the MRI showed no rotator cuff tendon tear. Celebrex was prescribed for Plaintiff's pain. Tr. 467. On a return visits to Dr. Kirol in June 2004, he ordered another MRI of Plaintiff's cervical spine which showed a broad-based disc protrusion with no neural foraminal narrowing or canal stenosis, and a small left paracentral disc protrusion at C5-6 with mild left-sided neural foraminal narrowing. Tr. 466, 484. Dr. Kirol suggested Plaintiff be evaluated and treated by a neurosurgeon. Tr. 465.

Dr. Timothy M. Zgleszewski began treating Plaintiff on November 10, 2004. He noted that Plaintiff had exhausted all conservative and aggressive conservative treatment, and diagnosed her with cervicalgia. Dr. Zgleszewski recommended that Plaintiff enter a pain management program which could offer psychological and physical therapy. Tr. 224-225. Dr. Zgleszewski saw Plaintiff again on November 15, 2004 for neck pain and requested that she return to see him and bring the results of her MRIs of her neck and shoulder. Tr. 223. On December 15, 2004, Dr. Zgleszewski noted that he was releasing Plaintiff from the pain management program and noted that she could work at a light duty level with lifting up to twenty pounds on an occasional basis; no overhead lifting; and

4

no repetitive bending, twisting, or lifting. He thought that she could walk and sit on a frequent basis. Dr. Zgleszewski rated Plaintiff's impairment as 8 percent to her back/spine secondary to her cervical myofascial pain. He diagnosed Plaintiff with neck pain, mild cervical spondylosis, and cervical myofascial pain. Dr. Zgleszewski opined that Plaintiff could work at the light duty level; could lift up to twenty pounds occasionally, but could only lift from knuckle to shoulder height; could not do any repetitive bending, twisting, or lifting; and could do no repetitive overhead lifting. Noting that Plaintiff had reached maximum medical improvement, Dr. Zgleszewski wrote that he planned to treat Plaintiff's pain relying solely on Zonegran and Cymbalta. Tr. 219-220.

Plaintiff sought treatment for her complaints of depression from a psychologist, Dr. Clay Drummond, in November 2004. Plaintiff complained of pain in her shoulder and arms since a workplace injury. She claimed she was limited in her activities and that her social and recreational life had been negatively affected. Dr. Drummond administered testing, and found that Plaintiff felt more affective distress due to her pain, compared to other chronic pain patients. She scored very high on scales for histrionic, compulsive, and somatoform personality patterns. Dr. Drummond suggested that Plaintiff pursue counseling and education about chronic pain, begin an exercise program, reduce chronic stress, and continue treatment for her medical conditions. Tr. 231-233. On December 13, 2004, Plaintiff told Dr. Drummond that her pain was a little bit better and that she had benefitted from her participation in a group therapy and exercise program. It was noted that Plaintiff hoped to get disability retirement, but she also planned to work with vocational rehabilitation to see what options there were for training and for other job possibilities. Tr. 230.

On March 14, 2005, Plaintiff saw Dr. Robert A. Wilson for complaints of severe right and left shoulder pain, as well as cervical spine discomfort. He noted that she was in obvious significant

5

distress, and that Plaintiff complained that her high doses of anti-inflammatory medications made her drowsy and did not relieve her pain. Dr. Wilson opined that Plaintiff suffered from a medical impairment in each upper extremity of about 30 percent. Dr. Wilson further noted that Plaintiff had lost 90 degrees of forward elevation of her shoulders, 30 degrees of backward elevation of the shoulders, 120 degrees of abduction of her shoulders and 20 degrees of external rotation in her shoulders. It was noted the severe pain also lessened her grip strength to four pounds in the left hand and five pounds in the right hand. Dr. Wilson found there was approximately a 70 percent impairment for each upper extremity noting her intense pain, decreased dexterity, and the loss of range of motion. Tr. 526.

On October 11, 2005,[2] Dr. Mitchell Hegquist conducted a consultative examination. His assessment was that Plaintiff had an obvious mental health disorder for which psychiatric evaluation and follow up was advised, and that she was status post bilateral shoulder injury of January 2004 with persistent complaints of pain and decreased range of motion involving both shoulders and the trapezius musculature. Cervical spinal x-rays indicated evidence of degenerative disc disease changes (loss of disc height at C4-5 and C5-6 as well as loss of normal cervical curve), but her vertebral bodies were otherwise normal and her disk spaces were well maintained with no obvious bony abnormalities. Tr. 205-208.

Dr. John Whitley, III, a psychologist, conducted a consultative examination in April 2006. Plaintiff reported that prior to her work injury she had been very outgoing, but had no interest in any activities at the time of the examination. She claimed to have poor memory and very poor

---

[2]At the beginning of the report, the date of examination is noted as October 11, 2003. However, this appears to be a typographical error as the report discusses MRI reports from June 2005, treatment in 2004 and 2005, and indicates it was transcribed on October 17, 2005.

6

concentration. It was noted that she was still taking Cymbalta. On examination, Dr. Whitley noted that Plaintiff's overall mood appeared sad and upset, she maintained good eye contact, and she spoke clearly and coherently. In tests of mental functioning, Plaintiff was unable to spell the word "world," remember more than one of four words after a ten minute delay, or to subtract by fives. Dr. Whitley diagnosed major depression (mild, single episode) and pain disorder due to a general medical condition. He assigned a Global Assessment of Functioning ("GAF") score of 55.[3] Dr. Whitley opined that Plaintiff's pain and depression impacted her ability to focus and concentrate, function socially, and to use appropriate judgment. He thought that Plaintiff would require assistance adhering to a schedule. Tr. 242-244.

On February 20, 2008, Plaintiff sought treatment from Dr. Lawrence Bergmann, a psychologist with Post Trauma Resources. Plaintiff reported that she had severe pain, primarily stayed in bed, and had thoughts of suicide (but was without a specific plan). It was noted that Plaintiff walked very slowly, appeared in pain, and cried throughout the initial interview. Examination revealed that Plaintiff was oriented but showed a fluctuating level of alertness, blunted

---

[3]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning ." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000). It should be noted that in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders:
> [i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.

Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013).

affect, and depressed mood. Plaintiff had poor eye contact, halting speech, and impaired attention and concentration. Dr. Bergmann stated that Plaintiff needed further treatment of her pain and depression, but that he could not prescribe pain medication. Dr. Bergmann continued to treat Plaintiff, in conjunction with psychiatrist Dr. Roger Deal, who prescribed Plaintiff's medications. See Tr. 381, 383. Plaintiff described some improvement after changing her antidepressant medication to Trazodone. Tr. 300-302, 304, 329. She reported she slept much better after her dose of Trazodone was increased. Tr. 306, 329. Plaintiff later reported she felt less anxiety after being prescribed Xanax. Tr. 315-16, 319, 321, 329. It was noted that Plaintiff still continued to have some bad days where she was in more pain, was more depressed, and was not sleeping. Tr. 303, 307, 322, 379.

From August 2008 through May 2010, Plaintiff was treated by Dr. Nancy Lembo of Carolina Spine and Sport Rehabilitation Specialists for cervical spondylosis and myofascial pain. Plaintiff was treated with various medications, trigger point injections, and a TENS unit. Range of motion was diminished, but Plaintiff had symmetrical reflexes, intact sensory examination, no atrophy, and 5/5 motor strength. See Tr. 276-294, 392-406.

Dr. Deal gave opinions on Plaintiff's ability to work. On September 1, 2010, Dr. Deal opined that Plaintiff was unable to work, unable to focus or concentrate, and unable to cook. Tr. 433-436. On May 5, 2011, Dr. Deal completed a mental impairment questionnaire. He opined that Plaintiff had no episodes of decompensation, but had marked restrictions of activities of daily living; marked restrictions as to her social functioning; and marked restrictions as to her ability to maintain concentration, persistence, or pace. Dr. Deal thought that Plaintiff was unable to function outside a highly supportive environment and that her pain impacted her cognition, mood, and level of independence. Tr. 535.

On May 5, 2011, Dr. Bergmann completed a mental impairment questionnaire. He assigned Plaintiff a GAF of 43, indicating severe limitations. Dr. Bergmann opined that Plaintiff had moderate restrictions of activities of daily living, extreme difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Bergmann stated that Plaintiff experienced severe limitations, would miss more than four days of work per month and that even a minimal change in environment could cause Plaintiff to decompensate. Tr. 528-531.

On June 16, 2010, Dr. Lisa Klohn, a state agency psychologist, opined that Plaintiff had moderate limitations as to restrictions of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. She stated that Plaintiff might have difficulty with complex tasks but should be able to perform simple, unskilled work that did not involve working with the general public. Dr. Klohn noted that Plaintiff originally did not claim to be disabled due to mental conditions, but treatment notes indicated she continued to present as flat and depressed. Dr. Klohn further noted that testing a few years prior revealed a rather histrionic style which would be consistent with making somewhat exaggerated reports, but not with the intention of being untruthful, and as a matter of style in terms of interacting with others. Dr. Klohn noted that nothing indicated that Plaintiff's impairments were so severe as to preclude the performance of unskilled work. Tr. 407-423.

On June 28, 2010, Dr. Krishna Reddy, a state agency physician, reviewed Plaintiff's medical records and opined that she could perform a range of light work. Dr. Reddy opined that Plaintiff should avoid reaching overhead and above shoulder level with his upper extremities; only occasionally stoop, twist, crouch, kneel, crawl, and climb ramps or stairs; should never climb ladders,

ropes, or scaffolds; should avoid unprotected heights and hazardous machinery; and should avoid concentrated exposure to extreme cold. Tr. 425-432.

## HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff described her past work. She testified as to the injury she suffered in 2004 while attempting to push a food service cart up a ramp. Tr. 43-47. Plaintiff stated that she had received a workers' compensation settlement in August 2005 in which it was found she had a 20 percent impairment of her back and neck, and had a 20 percent of her right and left upper extremities. Tr. 47-48. Plaintiff described her symptoms of pain and depression. Tr. 51-52. She admitted that medications were helpful in treating her mental condition. Tr. 49. Plaintiff claimed she could not make her bed, mop, or do dishes due to pain. Tr. 53.

## DISCUSSION

Plaintiff alleges that the ALJ: (1) failed to comply with 20 C.F.R. § 1529 and SSR 96-8 in not providing good reasons for rejecting the opinions of her treating physicians; (2) failed to properly take into account the opinions of physicians with significant longitudinal history such that the ALJ failed to properly consider the VE's testimony of disability; (3) erred in placing limitations on her that were not consistent with the medical records; and (4) failed to comply with SSR 96-7p and 20 C.F.R. § 404.1529 in evaluating her subjective complaints.[4] The Commissioner contends that the

---

[4]Plaintiff's original brief failed to comply with the Court's filing preferences. Additionally, Plaintiff appears to have cited to medical evidence by the date it was submitted to the Commissioner rather than to the transcript page. The undersigned directed Plaintiff to resubmit her brief to adhere to the standard filing preferences and to provide cites to the transcript for the medical evidence discussed. Plaintiff resubmitted her brief in the proper format, but omitted the "medical evidence" (with its references to the record) section. The undersigned has considered both Plaintiff's original and resubmitted brief in preparing this report and recommendation.

final decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence[5] and free of legal error.

A.  Treating Physicians/VE Testimony

Plaintiff alleges that the ALJ erred in failing to provide adequate reasons for rejecting the opinions of treating physician Dr. Deal and treating psychologist Dr. Bergmann. In particular, Plaintiff appears to argue that the opinions are entitled to greater weight because these doctors each have over forty years of experience in their fields, they treated Plaintiff for over three years, their clinical records are consistent with their opinions, their opinions are consistent with other substantial evidence of record, and their opinions are entitled to more weight than that of the opinions of non-treating physicians. The Commissioner contends that the ALJ reasonably discussed and weighed the opinions of the psychologists and physicians in this case, including the opinions of Drs. Bergmann and Deal. In particular, the Commissioner argues that the ALJ properly gave little weight to the opinions of these treating sources because conclusions that Plaintiff was disabled or unable to work touched on a matter reserved to the Commissioner and were not entitled to any specific significance, and the ALJ weighed and discussed these opinions and reasonably found that they did not provide persuasive evidence in support of the allegedly severe limitations. The Commissioner argues that the ALJ reasonably chose to give weight to the opinions of the state agency psychologist

---

[5]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

(Dr. Klohn) and implicitly to the report of examining psychologist Dr. Whitley whose report supported the RFC finding.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527 and 416.927; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount the opinions of Drs. Deal and Bergmann is supported by substantial evidence and correct under controlling law. The ALJ discussed and weighed these doctor's opinions and gave reasons for discounting them. As noted by the ALJ, Dr. Deal's opinion

that Plaintiff was permanently disabled is a matter reserved for the Commissioner (Tr. 20) such that it was not entitled to any special weight or significance. See 20 C.F.R. § 404.1527; Castellano v. Secretary of Health and Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994).

The ALJ's decision to discount the opinions of Dr. Deal and Dr. Bergmann because they failed to show significant objective evidence to warrant the severe limitations they imposed (Tr. 19) is also supported by substantial evidence. The ALJ reasonably found that these doctors did not provide persuasive evidence to support Plaintiff's allegedly severe limitations. When asked to list Plaintiff's symptoms and limitations in narrative form, Dr. Deal simply asserted, "She can't concentrate, has trouble organizing, little injury." Tr. 436. When asked to describe how these limitations affected her ability to work, Dr. Deal merely said, "She is not able to work." Id. Drs. Deal and Bergmann treated Plaintiff conservatively with therapy sessions and medications. As noted by the ALJ (Tr. 16), Plaintiff's psychological status was noted to be stable in October 2009. See Tr. 379. As discussed above, Plaintiff reported some improvement after Dr. Deal prescribed medications for her mental impairments. See, e.g., 300-302, 304, 306, 315-316, 319, 321, 329. Although Dr. Deal opined that Plaintiff was unable to cook, Plaintiff reported to Dr. Whitley that she was able to prepare food and do light cooking. Tr. 243. The ALJ also discounted these opinions that Plaintiff was so severely limited because Plaintiff had not required any inpatient hospitalization. Tr. 19.

Plaintiff also argues that because the ALJ discarded the opinions of Drs. Deal and Bergmann, he erred in failing to adopt the VE's recommendation that no jobs in the national economy existed if the claimant had the limitations outlined by Drs. Deal and Bergmann. At the hearing before the ALJ, the VE identified jobs which a claimant with restrictions outlined by the ALJ could perform. Plaintiff's attorney asked the VE to assume the claimant had the additional limitations of moderate

restrictions of daily living; extreme difficulties in maintaining social functioning; and marked difficulty in maintaining concentration, persistence, or pace. In response, the VE stated that someone with a marked ability to concentrate would not be able to perform the identified jobs or any other type of work. Tr. 56-57.

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the ALJ set out a hypothetical to the VE which included the limitations found by the ALJ in his decision. As the ALJ discounted the opinions of Drs. Deal and Bergmann, he was not required to accept the testimony of the VE as to whether Plaintiff would be able to perform the jobs identified if Plaintiff had the restrictions opined by Drs. Bergmann and Deal. The ALJ was not required to include the additional limitations proposed by Plaintiff's counsel because the ALJ did not find these limitations to be credible and/or supported by the record. See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record"); Chrupcala, supra.

B.    RFC

Plaintiff argues that the ALJ erred in placing limitations on Plaintiff that were not as serious as those recommended by her treating physicians. In particular, she appears to argue that the ALJ erred in determining that she only suffered from moderate restrictions of her activities of daily

14

living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. She also argues that the RFC assessment was not in accordance with the medical evidence including Dr. Lembo's finding in 2010 that Plaintiff was unable to perform even sedentary work due to physical limitations. The Commissioner contends that the RFC finding is supported by substantial evidence.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

The ALJ's determination that Plaintiff had the RFC to perform a significant range of light work is supported by substantial evidence and correct under controlling law. A narrative discussion of Plaintiff's impairments and their impact on Plaintiff's ability to work was included in the ALJ's decision. See Tr. 18-20. Both Dr. Klohn and Dr. Whitley opined that Plaintiff's depression only caused moderate limitations. The ALJ's determination concerning Plaintiff's mental RFC is supported by the opinion of Dr. Klohn that Plaintiff could perform unskilled work with limitations (as included by the ALJ in his RFC finding).

Plaintiff appears to argue that the ALJ should have found Plaintiff had further limitations based on the opinions of her treating sources. As discussed above, however, the ALJ reasonably discounted those opinions. Although a June 2004 cervical spine MRI showed a small disc protrusion

15

at C5-6 and a broad-based bulge at C4-5, Plaintiff was treated conservatively and in November 2004, Dr. Zgleszewski opined that Plaintiff could work at light duty level. In October 2005, cervical spinal x-rays indicated loss of normal cervical curve and loss of disc height at C4-5 and C5-6, but showed that the vertebral bodies were otherwise normal and the disc spaces were well maintained. Tr. 208. As discussed above and noted by the ALJ, examinations revealed that Plaintiff had 5/5 strength, intact sensation, and symmetric reflexes. The ALJ's determination that Plaintiff could perform a range of light work is also supported by the objective medical evidence including the opinion of state agency physician Dr. Reddy that she could perform a range of light work. See Tr. 19, 425-432.[6]

C.   Credibility

Plaintiff alleges that the ALJ erred "in using the difference between the claimant's subjective complaints and the RFC assessments as a basis for an unfavorable decision." She argues that the regulations do not require that Plaintiff's subjective complaints match the RFC assessment. Plaintiff asserts that medical evidence, including findings from Dr. Wilson that Plaintiff had no significant health problems or disabilities until her accident occurred; Dr. Kirol's diagnosis of Plaintiff as having multiple spine and shoulder conditions which are well-known to cause pain; the impairment ratings of Plaintiff's spine by Dr. Zgleskewski and Dr. Kirol; and the diagnosis of carpal tunnel syndrome by Dr. Lembo and Dr. Redmond shows that Plaintiff's subjective complaints were in accordance with the medical evidence. The Commissioner contends that the ALJ reasonably

---

[6]In arguing that the ALJ's RFC was not in accordance with the medical evidence, Plaintiff argues that VE Joel Leonard found that Plaintiff was unable to meet the specific demand of her job, and that her severe limitations would prevent her from returning to work. There is nothing in the record from VE Leonard. The only VE testimony in the record is from VE J. Ager Brown, who testified that a claimant with the limitations outlined by the ALJ could perform a significant number of jobs in the national economy. See Tr. 54-56.

16

evaluated Plaintiff's credibility and discounted it based on Plaintiff's daily activities, Plaintiff's inconsistent reports concerning her education level, and because her claims were not fully supported by the objective medical evidence.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d at 591-92; Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's subjective complaints is supported by substantial evidence and correct under controlling law. Contrary to Plaintiff's argument, the ALJ did not require Plaintiff's subjective claims to match the RFC, but instead he found that Plaintiff's subjective complaints were credible only to the extent that they limited her to a range of light, unskilled work. The ALJ reasonably discounted Plaintiff's credibility based on daily activities which showed only moderate limitations. See Tr. 17. Plaintiff reported to Dr. Whitley that she was able to prepare food, drive herself places, and shop, although she required some assistance due to her physical conditions.

She said she could do light cleaning, manage her finances, and care for children, with assistance. Plaintiff said she helped her son with homework and socialized with family. Tr. 242-243. Such activities are generally inconsistent with the severity of limitations and pain alleged by Plaintiff. See Mastro, 270 F.3d at 179 (claimant's daily activities undermined her subjective complaints); Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)(concluding that a claimant's assertions that she attended church, watched television, cleaned the house, washed clothes, visited relatives, fed her family pets, cooked, managed household finances, and performed stretches recommended by her chiropractor supported the ALJ's adverse credibility finding). The ALJ also reasonably discounted Plaintiff's credibility based on her being less than forthcoming regarding basic facts about her personal history. Tr. 19; see SSR 96-70 (stating that one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record). Plaintiff reported to Dr. Whitley that she was a high school graduate. Tr. 242. In her Disability Report, Plaintiff indicated that she completed the twelfth grade. Tr. 148. At the hearing, however, Plaintiff stated she did not finish high school or earn an equivalent degree. Tr. 39.

The ALJ also reasonably found that Plaintiff's subjective pain complaints were inconsistent with objective medical evidence in the record. See 20 C.F.R. § 404.1529(c)(2)("objective medical evidence...is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The ALJ noted that Plaintiff did not require inpatient treatment for her allegedly disabling mental conditions and that the mental health treatment records showed her condition was stable. See Tr. 19. After she began treatment with Dr. Bergmann and Dr. Deal for depression, Plaintiff described some improvement after beginning Trazadone (Tr. 300-302, 304, 329) and after

18

her dose of Trazodone was increased (Tr. 306, 329). She reported less anxiety after Xanax was prescribed. Tr. 315-316, 319, 321, 329. Objective evidence, including x-rays and other imaging, did not show evidence of any impairment causing the level of pain alleged by Plaintiff. No treating source recommended any surgery and she did not require inpatient hospitalization for any of her physical conditions.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be **AFFIRMED**.

Joseph R. McCrorey
United States Magistrate Judge

November 5, 2013
Columbia, South Carolina